**CARONDELET CENTRAL PARTNERS, et al., Plaintiffs,**

v.

**BACHE HALSEY STUART SHIELDS, INCORPORATED, Defendant.**

No. 82–0248 C (C).

United States District Court, E.D. Missouri, E.D.

July 25, 1983.

Charles Seigel, Jane Leonard, St. Louis, Mo., for plaintiffs.

Larry Luber, David Harris, St. Louis, Mo., for defendant.

## MEMORANDUM

MEREDITH, District Judge.

This matter was submitted to the jury seeking recovery on claims of fraudulent misrepresentation and breach of lease contract. The jury returned a verdict in favor of Plaintiffs and against the Defendant on fraudulent misrepresentation in the sum of $93,471.98 as actual damages and $3,000,000.00 as punitive damages. It returned a verdict in favor of the Defendant on the claim for breach of lease contract.

Defendant has filed a Motion for a Judgment Notwithstanding the Verdict, or Alternatively, for a New Trial or Remittitur in the amounts of actual and punitive damages. This Motion will be denied.

The facts of the trial showed that the Defendant came to the Plaintiffs and suggested they develop a single tenant building on a piece of property they owned at the corner of Carondelet and Central in Clayton, Missouri, and that they get an adjoining piece of property owned by others to come in on the deal. The Plaintiffs were unable to get the owners of the other piece of property to get interested in the deal and eventually bought the other piece of property. The evidence showed the Plaintiffs and Defendant negotiated for approximately a year and there was no substantial disagreement as to the terms of the lease. During this entire period of negotiation the Defendant represented to the Plaintiffs that they were not negotiating with anyone else for a lease and that even though the single tenant building would be more expensive, that was what the Defendant wanted.

From April, 1981 until November, 1981, the plans were drawn for a 12,000 square foot building, which was to be financed with Industrial Revenue Bonds issued by St. Louis County. The size of the building was then changed to 15,000 square feet, then back to 12,000 square feet, then up to 12,740 square feet, and finally up to 15,324 square feet.

The Defendant indicated they wanted this building ready for early occupancy and on December 11, 1981, Defendant told the Plaintiff that the lease had, in fact been approved by the Defendant. They further informed the Plaintiff that they were not dealing with any other organization looking for space, when in truth and in fact, in December of 1981 the Defendant was dealing with the Siteman Organization for a leasing of space in the Bemiston Towers.

The Plaintiffs acted in reasonable reliance on the information related to them by the Defendant and continued to make

expenditures in the sum of $93,471.98, to get the project ready to go. As early as November 1981, a cost analysis was being made by the Defendant of the Bemiston Tower building site. On December 15, 1981, Mr. Andre Leto, who was one of the managing executives of real estate for Bache, circulated a memorandum that a lease in the Bemiston Tower Building would save Bache over $3,000,000.00 over the 15 year life of the lease. On February 9, 1982, the Siteman Organization sent a final lease proposal for the Bemiston Towers to Bache. Two days later on February 11, 1982, Bache terminated its relationship with the Plaintiff, Carondelet Partners and advised them that the Carondelet Central lease was too expensive.

The Plaintiff testified that on December 11, 1981, Leto called Mr. Sauer and said the transaction had received final approval and as a result of this conversation, the Plaintiffs began their final arrangements and expenditures to put things in order. As late as February 5, 1982, Decker of Bache advised Sauer that the Bache Building was a completed and final transaction.

These representations made by Bache were false and known to be false at the time they were made. The actual damages were reasonable and represented the expenditures made by the Plaintiffs after December 11, 1981.

Considering the fact that the Defendant has a net worth of some $382,000,000.00 and the purpose of punitive damages is to serve as punishment the Court finds no reason to reduce either the actual or punitive damages. The Motion for Judgment Notwithstanding the Verdict or Alternatively a New Trial or Remittitur is being denied.

### JUDGMENT

This action came on for trial before the Court and a jury, Honorable James H. Meredith, District Judge, presiding, on Plaintiff's Four Count Complaint seeking recovery on claims of promissory estoppel, prima facie tort, fraudulent misrepresentation, and breach of lease contract, the issues having been duly tried and the jury having rendered the verdict,

It is ORDERED and ADJUDGED that Counts I and II for promissory estoppel and prima facie tort are hereby dismissed with prejudice, Plaintiffs Carondelet Central Partners having abandoned those claims during trial; that upon the claims submitted to the jury, judgment be entered on Count III, fraudulent misrepresentation, for Plaintiffs Carondelet Central Partners and that Plaintiffs Carondelet Central Partners recover of the Defendant Bache Halsey Stuart Shields, Inc., the sum of $93,471.98 as actual damages awarded by the jury, $3,000,000.00 as punitive damages as awarded by the jury, with interest thereon at the rate of 9.59% per annum and costs; and that judgment be entered on Count IV, breach of lease contract, for Defendant Bache Halsey Stuart Shields, Inc. Costs assessed against defendant.